# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL TLUMACKI,<br><br>                Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. 1:13-cv-01280-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Carl Tlumacki, by his attorney, Roger David Drake, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II and for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, U.S. Magistrate Judge.

Plaintiff alleges that the Commissioner erred in (1) failing to consider fully the consultative physician's opinion; (2) rejecting the opinions of Plaintiff's treating physician; and (3) finding Plaintiff's testimony less than fully credible. Following a review of the complete record and applicable law, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.

1

I. **Procedural History**

On November 5, 2010, Plaintiff filed applications for disability insurance benefits and for supplemental security income.  Plaintiff alleged disability beginning October 1, 2008.  The Commissioner initially denied the claims on May 11, 2011, and upon reconsideration, on August 26, 2011.  On September 27, 2011, Plaintiff filed a timely request for a hearing.

Plaintiff appeared and testified at a hearing on May 22, 2012.  Christopher C. Salvo, an impartial vocational expert, also appeared and testified.

On June 19, 2012, Administrative Law Judge Trevor Skarda denied Plaintiff's application.  The Appeals Council denied review on June 24, 2013.  On August 13, 2013, Plaintiff filed a complaint seeking this Court's review.

II. **Factual Background**

Plaintiff (born July 26, 1957) worked as a chiropractor from 1985 to 2005.  After his being seriously injured in a 1997 automobile accident, Plaintiff's employer modified his job duties to concentrate on paperwork and x-ray evaluation since he was no longer physically able to perform chiropractic adjustments.  In 2005, his employer laid Plaintiff off.  Plaintiff then let his license lapse.

Thereafter, Plaintiff, whose work as a chiropractor had provided him with an understanding of the workers' compensation system, was employed as medical lien representative, representing in court a company that held outstanding workers' compensation and personal injury liens.  Plaintiff was laid off from that job in August 2008 and collected unemployment benefits thereafter.

Plaintiff drove a manual transmission automobile.  He attended church, which included a three-hour Sunday service with hourly breaks.  Plaintiff was able to shower, using a shower seat to change position as needed.  Walking was difficult: Plaintiff limped.  Using a cane was not helpful since it resulted in shoulder pain.

Plaintiff rented a room in a house.  He prepared meals using the microwave.  Although shopping was difficult, he was able to walk to get what he needed by leaning on the cart.

Plaintiff testified that he was able to sit for 30 to 40 minutes before needing to stand up and take a few steps.  He could stand for five to ten minutes before needing to change positions.  He could walk about 75 yards before needing to rest.  Plaintiff was  5'9" tall and weighed approximately 260 pounds.

In response to his attorney's questions, Plaintiff testified that his consultative medical examination was "cursory at best."  AR 44.  Dr. Chan did not see him walk, said Plaintiff, nor did he examine deep tendon reflexes as he reported.

In a Disability Report-Appeal dated September 16, 2011, Plaintiff stated that pain in his right ankle and lower back, radiating into his legs, had increased, and the range of motion of his right ankle and lower back had decreased.  His balance was more impaired.  The distance he was able to walk and his capacity to stand had decreased.  The transition from sitting or lying down to standing and walking had become slower and more difficult; negotiating uneven terrain was a greater challenge.  As a result, Plaintiff was experiencing greater difficulty shopping and cleaning his apartment.

**Medical records.**  On April 18, 2008, podiatrist Jason Hiatt, D.P.M., examined Plaintiff as a new patient.  Plaintiff sought treatment of increased pain and swelling, and altered gait, of his right ankle.  He had recently developed an ulceration on his left ankle from a new pair of boots.  He also complained of foot and leg cramps, swelling of his legs, and foot pain at rest.

When Plaintiff saw Dr. Hiatt on August 19, 2010, the ulceration had healed well.  Dr. Hiatt recommended a trial of scaphoid pads in place of Plaintiff's over-the-counter supports, which were collapsing.  On October 26, 2010, Dr. Hiatt reported that Plaintiff's choice of appropriate footwear reduced the occurrence of ulcers and fissures on his feet.  With use of the shoes and the support pads, Plaintiff's leg-length discrepancy was addressed to allow activity.

On January 25, 2010, Plaintiff saw Patrick Rhoades, M.D., at Central Valley Pain Management, to "discuss disability."  AR 247.  The examination revealed limited abduction of the

3

shoulders with some associated pain, a left bicipital tear, good upper extremity strength, tenderness of midline paraspinal muscles, and limited range of motion of the lumbar spine. Deep tendon reactions were normal for the right knee but absent for the left knee and both ankles. Flexion and extension of both ankles was very limited; inversion and eversion were absent. (This limited range of ankle motion produced Plaintiff's antalgic gait.). The left ankle had an extreme valgus deformity, and the left foot had no arch. Although Plaintiff's left leg bore a deep scar, Dr. Rhoades observed no atrophy. Dr. Rhoades opined:

> It is my feeling at this time that this patient is unemployable. I do not feel that he could bear to sit or stand for any length of time, nor do I believe he could do any physical labor. This would preclude him from doing chiropractic which requires a fair amount of physical dexterity and strengths in order to manipulate joints. I don't think he can stand the standing on his feet and could never perform to a level where he could actually make a living. I don't think he could sit for any length of time nor stand for any length of time doing anything else. I don't believe he will be physically able to do anything where he could work. Therefore, it is my feeling that he is permanently and totally disabled and unable to compete in the open labor market.

AR 248.

On February 26, 2010, Fariba Vesali, M.D., certified in physical medicine and rehabilitation, performed a consultative orthopedic examination. Dr. Vesali noted that Plaintiff was in no acute distress and was able to get on and off the examining table and to don and doff his shoes without difficulty. Plaintiff walked "with an abduction of the bilateral lower extremities with decreased movement of the knees." AR 260. Dr. Vesali identified high blood pressure and referred Plaintiff to the emergency room for immediate treatment.

Dr. Vesali opined:

> The claimant should be able to walk and stand four hours in an eight-hour day with breaks every one hour for stretching. The limitation is due to chronic low back pain, chronic bilateral ankle pain, possible osteoarthritis of ankles, and left knee.
>
> The claimant should be able to sit six hours in an eight hour day with normal breaks.

4

> The claimant does not use an assistive device.
>
> The claimant should be able to lift/carry 10 pounds frequently and 20 pounds occasionally. The limitation is due to chronic left knee pain and bilateral ankle pain, possibly osteoarthritis.
>
> No manipulative limitations on reaching, handling, feeling, grasping, and fingering.
>
> No limitation on working at heights, around heavy machinery, extreme of temperature, chemicals, dust, fumes, gases, and excessive noise.

AR 262-AR 263.

On April 8, 2010, radiologist Robert R. Anderson, M.D., reported that x-rays of Plaintiff's left ankle revealed post-traumatic deformities, including "a somewhat cystic appearance of the distal fibula of uncertain significance." AR 257. X-rays of Plaintiff's right ankle revealed post-traumatic changes including arthritis and joint space narrowing. Post-traumatic deformities were also apparent in x-rays of the left femur. Lumbar spine x-rays showed developmental changes and mild degenerative changes.

On November 12, 2010, Physician's Assistant Kristy Lindstrom cancelled Plaintiff's appointment at Central Valley Pain Management, stating "we have not been treating the patient so he will need to go to treating physician to have his form filled out." AR 249.

On November 22, 2010, Plaintiff saw Dr. Rhoades for treatment of severe pain in his neck and lower back. On December 20, 2010, Plaintiff returned to Central Valley Pain Management, where he was treated by Physician's Assistant Rhonda Johnson. Plaintiff complained of pain in his back, legs, and arms, fatigue, erectile dysfunction, and mild depression, and requested a check of his testosterone. Pain was 4/10 with medication.

On December 20, 2010, Dr. Rhoades, in a document entitled "Medical Opinion Re: Ability to Do Work-Related Activities," which had been provided by Plaintiff's attorneys, opined that Plaintiff could lift and carry less than ten pounds frequently or occasionally, and could stand, walk, or sit less than two hours in an eight-hour workday. Plaintiff would need to change position at will after sitting for 45 minutes or standing for fifteen minutes. He needed to be able to walk around for five to ten minutes every 45 minutes and to lie down every four to six hours. Plaintiff could never twist,

stoop, crouch, climb ladders, kneel, balance, handle, finger, or feel. He could occasionally climb stairs, crawl, reach, push, or pull. Plaintiff need to avoid all exposure to wetness, fumes and odors, and hazards, and to avoid concentrated exposure to extreme heat, humidity, and noise. Plaintiff exhibited evidence of antalgic gait, poor balance, and difficulty using his lower extremities. He took Diclofenac for pain occurring in his lower extremities and resulting from flexion and extension of his lumbar spine. In Dr. Rhoades' opinion, Plaintiff would miss work about three times monthly.

A January 15, 2011 intake examination at Stanislaus Health Services revealed high blood pressure, asymptomatic sinus tachycardia, ceruminosis (excessive earwax), and obesity (270 pounds). Other diagnoses included psoriasis, lower extremity neuropathy, and arthralgia.

On April 1, 2011, consulting internist Frank Chen, M.D., examined Plaintiff. Dr. Chen diagnosed obesity and chronic pain of the back, left ankle, and left knee, but found no functional limitations.

On April 15, 2011, Plaintiff was transported to Doctor's Medical Center by ambulance, reporting that he had a sore throat (pain was 8/10) for a week. Emergency room records reported that Plaintiff was in no apparent distress. Motor strength was 5/5 in all extremities. Doctors diagnosed pharyngitis and tonsillitis, presumed to be strep. Plaintiff was sent home with prescriptions for Motrin, Vicodin, and penicillin.

In Residual Functional Capacity Assessment dated May 3, 2011, medical consultant E. Wong, M.D., opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could stand, walk, and sit about six hours in an eight-hour workday; had limited ability to push and pull with his lower extremities; could frequently climb ramps and stairs, balance and kneel, and occasionally climb ladders, ropes, and scaffolds, stoop, crouch, and crawl. Dr. Wong rejected Dr. Chen's finding of no limitations, opining that it was not supported by Plaintiff's limited range of ankle motion.

On August 16, 2011, agency physician I. Ocrant, M.D. gave little weight to Dr. Rhoades' opinion as overly restrictive and unsupported by Dr. Rhoades' treatment notes.

On October 7, 2011, Plaintiff saw Dr. Rhoades for continued diffuse pain (4/10), worse in the right ankle. Dr. Rhoades continued Plaintiff's medications.

6

On February 3, 2012, Plaintiff complained to Dr. Rhoades of pain rated 6/10 despite medication. Dr. Rhoades continued Plaintiff's prescription for Voltaren and opined," I think the combination of symptoms has made it to the point where he cannot return to regular work. I believe the inability to work is secondary to inability to find a comfortable position for any length of time." AR 267.

On April 3, 2012, Dr. Rhoades again treated Plaintiff for pain rated 6/10 with medication. Dr. Rhoades opined, "Patient is permanently disabled." AR 269.

**Vocational expert testimony.** Vocational expert Christopher C. Salvo categorized Plaintiff's past work as chiropractor (DOT # 079.101-010, medium, skilled, SVP8) and legal aide (DOT # 119.267-026, light, skilled, SVP 7).

For the first hypothetical question, the ALJ directed Salvo to assume a hypothetical person of the same age, education, and work background as Plaintiff, who was limited to light work, and could occasionally push or pull bilaterally with his lower extremities; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance and kneel; and occasionally stoop, crouch, or crawl. The hypothetical person must avoid excessive vibration and extreme cold. Salvo opined that the hypothetical person could perform Plaintiff's past work as a legal aide or medical lien representative.

For the second hypothetical question, the ALJ directed Salvo to assume the hypothetical person described in the first hypothetical who also required the option to sit or stand at will so long as the total sitting time did no exceed two hours. Salvo opined that the second hypothetical person could perform Plaintiff's past work as a legal aide or medical lien representative.

For the third hypothetical question, the ALJ directed Meyers to assume a hypothetical person of the same age, education, and work background as Plaintiff, who was limited to sedentary work with the same limitations described the second hypothetical person except that he could not stand for more than two hours in an eight-hour work day. Salvo opined that the third hypothetical person could not perform Plaintiff's past work. Noting that his opinion deviated from the *Dictionary of Occupational Titles*, Salvo opined that since about one-half of the available legal aide positions are actually performed as sedentary work, the third hypothetical person would have transferable skills to

7

those positions. The third hypothetical person would also have transferable skills for the job of eligibility worker (DOT # 195.267-010, sedentary, skilled, SVP 6).

In response to the ALJ's questioning, Salvo opined that an employer, typically a governmental agency, would allow an eligibility worker one day of absence monthly and two daily breaks of fifteen minutes each. More frequent absences or a need for more or longer breaks would preclude work at all exertional levels.

**III.  Discussion**

    **A.  Legal Standards**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

///

///

Step five:   Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2008.  As a result of a 1997 motor vehicle accident, his severe impairments were bilateral tibia, left femoral and sacral fractures, low back pain, bilateral ankle degenerative joint disease, and hypertension.  None of these impairments or in any combination met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).  Plaintiff was able to perform his prior work as a legal aide, or in the alternative, to perform other work to which his skills were transferable.  Accordingly, the ALJ concluded that Plaintiff was not under a disability.

**B.**   **Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).  "Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

///

### C. **Plaintiff's Credibility**

Plaintiff objects to the ALJ's findings that his testimony was not fully credible, arguing that the findings on credibility were not supported by clear and convincing evidence. The Commissioner disagrees, emphasizing that an ALJ cannot find disability on a sole basis of a claimant's subjective testimony.

"An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). He or she "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). The hearing decision must set forth specific reasons for rejecting the claim, explaining why the testimony was unpersuasive. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, an ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). He or she may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

///

The ALJ complied with these requirements, carefully analyzing the hearing testimony and the administrative record as a whole to conclude that although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, his statements about the impairments' intensity, persistence and limiting effects were less than fully credible.

He noted that Plaintiff's unemployment relate not to his impairments, but to his having been laid off from his job as a medical lien representative. Plaintiff testified that he received unemployment compensation following the lay-off, which, the ALJ commented, required Plaintiff to continue to hold himself out as willing and available to work.

Although Plaintiff asserted that his condition was worsening, the very limited evidence of medical treatment during the relevant time period included treatment of a sore throat that was diagnosed as a strep infection and a limited series of appointments with Dr. Rhoades, whom Plaintiff had consulted to "discuss disability." AR 247. Indeed, it appears that Plaintiff did not begin to schedule regular appointments with Dr. Rhoades until a nurse practitioner cancelled Plaintiff's appointment to have a disability form completed because he was not seeking regular treatment from Dr. Rhoades. The absence of regular medical treatment belies a claimant's assertions that his or her condition was worsening. *Stanistreet v. Chater*, 21 F.Supp.2d 1129, 1136 (C.D. Cal. 1995). *See also Fair*, 885 F.2d at 603.

The ALJ contrasted Plaintiff's representations of his condition with his daily activities. Plaintiff told Dr. Vesali that he was able to live by himself, drive a car, do the dishes, sweep, vacuum, and shop for groceries. Similarly, Plaintiff told Dr. Chen that he cooked, washed dishes, did laundry, bought groceries, watched television, listened to music, read, walked, and drove a car. Plaintiff testified that he drove a manual transmission automobile, attended church, including a three-hour Sunday service with hourly breaks, and was able to grocery shop with the support of the cart.

The ALJ observed that Plaintiff's representations of his physical condition were contradicted by objective medical testing and observation in the record. Dr. Vesali observed that Plaintiff was in no apparent distress, had no difficulty with the examining table or his shoes, and demonstrated normal upper body strength, no tenderness in the spinal area, and no obvious inflammation of the

11

affected joints.  Dr. Chen also observed that claimant was in no acute distress, walked without difficulty, and sat comfortably during the examination.  Emergency room records noted full strength and normal sensation in all extremities.

The ALJ did not err in finding that the credibility of Plaintiff's subjective testimony was undermined by the objective medical evidence, his employment history, and activities of daily living.

### D. Medical History and Opinions

Plaintiff contends that the ALJ erred in (1) failing to discuss Dr. Vesali's comment that Plaintiff "should be able to walk and stand four hours in an eight hour day with breaks every one hour for stretching" (AR 262), and (2) rejecting the opinion of his treating physician, Dr. Rhoades. The Commissioner responds that the ALJ appropriately evaluated both opinions.

#### 1. Medical Opinions, In General

Physicians render two types of opinions in disability cases: (1) clinical medical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "An ALJ is not bound by an expert medical opinion on the ultimate question of disability." *Tomasetti*, 533 F.3d at 1041; S.S.R. 96-5p.

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] not treat[ed] the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nontreating physician. *Id.*

///

The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631. A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Once a court has considered the source of the medical opinion, it considers whether the Commissioner properly rejected a medical opinion by assessing whether (1) contradictory opinions are in the record and (2) clinical findings support the opinions. The ALJ may reject an *uncontradicted* opinion of a treating or examining physician only for clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. Even though the treating physician's opinion is generally given greater weight, when it is contradicted by an examining physician's opinion that is supported by different clinical findings, the ALJ may resolve the conflict.

An ALJ must determine a claimant's residual functional capacity based on "all relevant evidence in the record." *Valentine v. Commissioner of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence, and make a finding. *Magallanes*, 881 F.2d at 751-55. The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751. Although an ALJ is not bound by uncontroverted opinions rendered by a plaintiff's physicians regarding the ultimate issue of disability, he or she cannot reject them out of hand, but must set forth clear and convincing reasons for rejecting them. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). The ALJ must tie the objective factors of the record as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ's evaluation of Plaintiff's application for benefits complied with these guidelines.

### 2. **Dr. Rhoades**

Plaintiff contends that the ALJ erred in rejecting Dr. Rhoades' opinions since Rhoades was a treating physician. As discussed above, the Commissioner generally gives greater weight to the opinions of treating physicians. 20 C.F.R. § 404.1527(c)(2). Treating physicians "are likely to be able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations." *Id.*

The Commissioner does "not consider an acceptable medical source to be your treating physician if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source." 20 C.F.R. § 404.1502.

Dr. Rhoades did not begin to "treat" Plaintiff until January 2010, more than twelve years after his auto accident, when Plaintiff consulted Dr. Rhoades to "discuss disability." Dr. Rhoades thereafter provided only sporadic treatment consisting primarily of renewals of Plaintiff's existing prescriptions and completiton of disability reports. Since Dr. Rhoades' treatment of Plaintiff was limited to continuing his pain medications and preparing subjective disability evaluations, he lacked the in-depth, long-term relationship on which the regulatory preference for treating physicians is based. *See Stanistreet*, 21 F.Supp.2d at 1137 (in the absence of any evidence that Dr. Slutzker had seen or examined the claimant between March 1986 and April 1992, his opinion was not appropriately evaluated as that of a treating physician).

In addition, the ALJ accurately found that Dr. Rhoades conclusory opinions of disability were inconsistent with the limited records of Dr. Rhoades' diagnosis and treatment of Plaintiff:

> Dr. Rhoades' progress notes dated October 3, 2011 show[] the claimant with complaints of diffuse pain throughout his body but primarily in the right ankle and rated as 4/10 on the pain scale. Dr. Rhoades indicated there was a full range

14

of motion, stability, and strength in the bilateral upper extremities which is contrary to his finding of restrictions upon reaching. Although Dr. Rhoades documented pain on palpation of the low back and right ankle; he also noted full strength, range of motion, and stability of the bilateral lower extremities which contradicts his findings of significant limitations on exertional or postural activities.

Dr. Rhoades indicates that the claimant is disabled and unable to work, which is an issue reserved for the Commissioner. Nevertheless, his opinion is given reduced weight due to the sporadic treatment history, internal inconsistencies between his assessment and the objective findings upon the examination which do not substantiate the findings of significant restrictions. Moreover, Dr. Rhoades' opinion is quite conclusory, providing little detail as to the evidence relied on in forming this opinion and the level of severity is neither supported by the medical records nor consistent with other substantial evidence of record.

AR 21.

The ALJ did not err in rejecting Dr. Rhoades' conclusory and unsupported opinions that Plaintiff was disabled.

### 3.     **Dr. Vesali's Comment on Stretching Breaks**

Plaintiff contends that the ALJ's analysis of Dr. Vesali's opinion erroneously disregarded the comment that Plaintiff could "walk and stand four hours in an eight hour day with breaks every one hour for stretching." As set forth in context in the factual statement above, Dr. Vesali opined that Plaintiff "should be able to walk and stand four hours in an eight-hour day with breaks every one hour for stretching," and "able to sit six hours in an eight hour day with normal breaks." AR 262. Plaintiff interprets Dr. Vesali's opinion to require additional breaks during the work day to permit Plaintiff to stretch while standing. Although the Commissioner concedes that the ALJ did not explicitly address Dr. Vesali's stretching provision, she argues that the ALJ adequately addressed it by exploring the availability of a sit-stand option with the vocational examiner.

Light work requires standing or walking for approximately six hours of the work day. POMS DI 25001.001B.44. Sedentary work requires no more than two hours of standing or walking. POMS DI 25001.001B.69. A claimant's need to sit and stand at will is incompatible with a finding of light work, which requires an ability to stand for six hours in an eight-hour work day. *Perez v. Astrue*,

250 Fed. Appx. 774, 776 (9th Cir. 2007). Assuming that Plaintiff's need to stretch hourly is adequately addressed by providing a sit/stand option, then, Plaintiff would be unable to perform light work but would remain able to perform sedentary work. This means that Plaintiff could not perform his prior work as a medical lien representative as he performed it.

Nonetheless, the error is harmless. Vocational expert Salvo opined that even though Plaintiff's prior position as a legal aide or medical lien representative was officially categorized as light work, approximately one-half of legal aide positions, for which Plaintiff had transferable skills, were sedentary work as actually performed. In addition, said Salvo, Plaintiff's skills were also transferable to the sedentary position of eligibility worker of which substantial jobs were available in California and nationally.

The ALJ's failure to specifically address the requirement of hourly stretching did not constitute reversible error.

**IV.     Conclusion and Order**

The Court finds that the ALJ applied appropriate legal standards and that substantial evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   **January 23, 2015**              **/s/ Sandra M. Snyder**
                                           UNITED STATES MAGISTRATE JUDGE